UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL LANVIN-VALDEZ,

      *Petitioner*,

v.

          Case No. 3:26-cv-180-JEP-SJH

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, et al.,

      *Respondents*.

_____/

## **ORDER**

Petitioner, an immigration detainee at Baker Correctional Institute, filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2241 on January 30, 2026. (Doc. 1). Petitioner argues that his prolonged detention violates the Fifth Amendment's Due Process Clause as the Supreme Court construed it in *Zadvydas v. Davis*, 533 U.S. 678 (2001).[1] (Doc. 1 at 6). He asks the Court to order his immediate release. (*Id.* at 7).

The Federal Respondents (U.S. Immigration and Customs Enforcement ("ICE") and U.S. Department of Homeland Security ("DHS")) filed a response in opposition to the petition. (Doc. 6). Respondent Warden, Baker County

---

[1] Although Petitioner does not cite to *Zadvydas*, his allegations mirror the language used in *Zadvydas*.

Detention Center filed a motion to dismiss arguing that he is not a proper respondent. (Doc. 5). Petitioner filed a reply. (Doc. 8). Upon review of the parties' filings, the Court concludes the petition must be granted.

## I.

Petitioner, a citizen of Cuba, entered the United States on January 18, 2007, without admission or parole, but was subsequently paroled into the United States "for the purpose of public interest" on February 23, 2007. (Doc. 6-1 at 2). Petitioner was convicted of drug-related offenses in 2011 and sentenced to a ten-year term of imprisonment. (*Id.*). On April 25, 2017, an immigration judge ordered Petitioner removed from the United States to Cuba, and following the order of removal, Petitioner was detained in ICE custody. (Doc. 6 at 3; Doc. 6-6 at 3; Doc. 6-8). At some point, Petitioner was granted a withholding of removal to Cuba. (Doc. 6-4 at 2). On August 22, 2017, Petitioner was released from ICE custody on an order of supervision ("OSUP"). (Doc. 6-6 at 3).

In May 2024, Petitioner was convicted of additional drug-related offenses and sentenced to a three-year term of imprisonment. (Doc. 6 at 4). On July 16, 2025, Petitioner "was processed by the CAP[2] program . . . in Tallahassee and

---

[2] Criminal Alien Program.

[has] been detained since, eventually arriving at Baker [Correctional Institute] on [September 24, 2025]." (Doc. 6-6 at 3).

On December 27, 2025, a "Warrant of Removal/Deportation" was issued for Petitioner, and on January 6, 2026, ICE advised Petitioner of its intention to remove him to Mexico. (Doc. 6 at 4; Doc. 6-3 at 1, 5). According to the deportation officer:

> The [P]etitioner will be transferred to one of the corresponding ICE field offices along the southwest border that processes third-country removals to Mexico.
>
> The receiving [Enforcement and Removal Operations] field office will then notify Mexico's Instituto Nacional de Migracion (INM) of the [P]etitioner's upcoming removal to Mexico.
>
> Following INM's final acceptance, the Petitioner will immediately be transported to the Customs and Border Patrol corresponding port of entry for removal to Mexico.
>
> Each ICE field office along the southwest border that processes third-country removals to Mexico removes a varying amount each week. Removals take place from each corresponding office from once a week to several times a week.
>
> Therefore, ICE determines that there is a significant likelihood of removal in the reasonably foreseeable future.

(Doc. 6-6 at 5).

The Court first addresses the motion to dismiss, followed by a discussion of the merits.

3

## II.

In the motion to dismiss, the "Warden requests the Court dismiss [him] from this proceeding with prejudice" as an improper respondent. (Doc. 5 at 12). He argues that ICE is Petitioner's "'immediate custodian'" and "the director of ICE's local field office responsible for the Baker County Detention Center – not its 'warden' – is the proper respondent." (*Id.* at 11-12).

Another judge on this Court recently observed:

> [T]here is much confusion and difference of opinions on who the proper respondent is when an immigration detainee files a § 2241 petition. The Court recognizes [the Warden's] argument that while a warden may technically maintain day-to-day control of a facility, the warden does not have ultimate control over an immigration detainee's custody status, and a warden is ill-equipped to respond to a habeas petition and defend the federal government's interests. Nevertheless, the warden is the "immediate custodian" and presumably the individual who, upon ICE's direction, opens the door to release the detainee. Given the uncertainty and wide-ranging decisions on this particular issue, the Court declines to find that the warden is not a proper respondent. *See, e.g., Vasquez v. Reno*, 233 F.3d 688, 696 (1st Cir. 2000) ("[W]e hold that an alien who seeks a writ of habeas corpus contesting the legality of his detention by the INS normally must name as the respondent his immediate custodian, that is, the individual having day-to-day control over the facility in which he is being detained."); *Pak v. Hoover*, No. 3:26-CV-00379, 2026 WL 624165, at *1 n.1 (M.D. Pa. Mar. 5, 2026) (maintaining the warden as the only respondent, but recognizing that "the government will be bound by the [c]ourt's judgment because [the warden] is acting as an agent of the federal government by detaining [the petitioner] on behalf of [ICE]"); *Cid-Barrios v. Raycraft*, No. 25-13630, 2025 WL 3724377, at *4 (E.D. Mich. Dec. 24, 2025) ("[T]he Acting Director of Enforcement and Removal Operations for the USCIS Detroit Field Office, and not the administrator of the contract detention facility in Lake County, is the proper respondent to be named in a habeas corpus petition

filed by a non-citizen challenging his detention under section 2241."); *Krechmar v. Parra*, No. 2:25-CV-01095-SPC-DNF, 2025 WL 3620802, at *2 (M.D. Fla. Dec. 15, 2025) (recognizing that "[t]he warden of Alligator Alcatraz would be ill-equipped to respond to the merits of [the petitioner's] claims and to be the *sole* defender of the federal government's interests" (emphasis added)); *Beltran v. Raycraft*, - - - F. Supp. 3d - - - , 2025 WL 3237429, at *11-12 (W.D. Mich. Nov. 20, 2025) (recognizing that while the Sixth Circuit has concluded that a noncitizen must generally name his immediate custodian, that is ICE's district director for the district in which he is confined, there are exceptions, such as naming the Secretary of DHS to ensure at least one respondent maintains authority over the petitioner's custody in the event he is transferred out of the district; dismissing all respondents other than the Secretary of DHS, including the warden of the facility at which the noncitizen was housed).

*Lara-Reyes v. Warden*, No. 3:25-CV-1618-MMH, 2026 WL 733712, at *5 (M.D. Fla. Mar. 16, 2026). And another judge on this Court subsequently explained how the Warden's argument "runs headlong into a firm rule of law" despite its "common-sense appeal." *Jimenez v. Mordant*, No. 2:26-cv-451-KCD, 2026 WL 820536, at *1 (M.D. Fla. Mar. 25, 2026). Here, the Court agrees and will deny the motion to dismiss.

### III.

Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021) ("§ 1231 explains what to do if the alien is ordered removed."); *see also Deshati*

*v. Noem*, No. 25-cv-15940-ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025)[3] ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to section 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2)(A). "The 90-day removal period shall be extended, and the noncitizen may remain in detention, if the noncitizen (1) 'fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure' *or* (2) 'conspires or acts to prevent the alien's removal.'" *Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(C)).

The Supreme Court in *Zadvydas* held that indefinite detention of aliens after a final order of removal raises serious constitutional concerns. 533 U.S. at 690–99. Once an order of removal is final, the government may continue to detain an alien only for a reasonable amount of time. *See id.* at 699–701. The reasonableness of the detention is to be measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence *at the moment of*

---

[3] Although district court orders are non-precedential, they may be cited as persuasive authority. *See Stone v. First Union Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

*removal.*" *Id.* at 699 (emphasis added). The Supreme Court held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. *Id.* at 700–01. "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period [from section 1231(a)(1)(A)] plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 1052 (quoting *Zadvydas*, 533 U.S. at 701). Thus, "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Notably, *Zadvydas* claims asserted prior to the presumptively reasonable six-month period are deemed unripe and subject to dismissal without prejudice. *See Akinwale*, 287 F.3d at 1052; *see also Ramos Alvarez v. U.S. Immigr. & Customs Enf't*, No. 3:25-cv-1038, 2025 WL 2591830, at *1 (M.D. Fla. Sept. 8, 2025).

**IV.**

Before addressing the merits of Petitioner's *Zadvydas* claim, the Court finds no merit in the Federal Respondents' arguments that the Court does not have jurisdiction to decide whether Petitioner's detention is lawful. *See Zadvydas*, 533 U.S. at 688 (citing § 1252(g) yet concluding "that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention"); *see also Linares v. Dep't of Homeland Sec.*, 529 F. App'x 983, 984 (11th Cir. 2013)[4] (finding the petitioner's "challenge to his continued detention is similarly distinct from a challenge to his removal order" and therefore not barred by the REAL ID Act, including § 1252(b)(9)); *Madu v. U.S. Atty. Gen.*, 470 F.3d 1362, 1367 (11th Cir. 2006) ("[W]hile the REAL ID Act amended § 1252(b)(9) by adding an explicit bar on habeas jurisdiction over certain claims, the Act did not expand the scope of (b)(9) by making it applicable to cases other than those involving 'review of an order of removal.'"). Petitioner is not seeking review of an order of removal; instead, he challenges his prolonged detention. Thus, the Court is satisfied it has jurisdiction over Petitioner's claim.

---

[4] This Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when this Court finds them persuasive on a particular point. *See McNamara v. GEICO*, 30 F.4th 1055, 1060–61 (11th Cir. 2022); Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

The Federal Respondents do not dispute that when Petitioner filed this case, he had been in ICE custody for over six months following his order of removal. (Doc. 6 at 8). ICE re-detained Petitioner on July 16, 2025, and he filed this case 198 days later on January 30, 2026. As such, the Court finds that Petitioner's six-month period expired prior to filing this case.

The Court also finds that Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner's order of removal became final in 2017, but he was released on an OSUP because ICE was unable to remove him at that time. He has now been detained for nearly nine months, and he contends that "ICE is not likely to remove [him] in the near future." (Doc. 1 at 6). Thus, the burden shifts to Respondents to "respond with evidence sufficient to rebut [Petitioner's] showing." *Akinwale*, 287 F.3d at 1052. As explained below, the Federal Respondents fail to do so.

The record is devoid of any evidence showing the actions ICE took between July 16, 2025, when Petitioner was re-detained, and December 27, 2025, when a "Warrant of Removal/Deportation" was issued for Petitioner to effectuate his removal. Then on January 6, 2026, ICE notified Petitioner of its intent to remove him to Mexico. To date, however, ICE has not removed him. The Federal Respondents rely on the deportation officer's declaration to conclude that there is a significant likelihood of removal in the reasonably

foreseeable future, but that declaration merely describes the general process for third-country removals to Mexico—there is no specific timeline provided for Petitioner's alleged "imminent" removal. Nor is there any indication about whether Mexico will provide "final acceptance" of Petitioner. (Doc. 6-6 at 5 ("Following INM's final acceptance . . . .")). Petitioner has now been in ICE custody for nearly nine months with ICE being unable to remove him or otherwise provide more specific details on when he will be removed.

Based on the evidence presented, the Court finds that the Federal Respondents have failed to show a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Therefore, Petitioner is entitled to release from detention under *Zadvydas*. However, Petitioner's release "shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3); *Zadvydas*, 533 U.S. at 699–700 (holding that when continued detention is unreasonable because removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release.").

Accordingly, it is **ORDERED**:

1. Respondent Warden, Baker County Detention Center's motion to dismiss (Doc. 5) is **DENIED**.

2. Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 1) is **GRANTED** as to his *Zadvydas* claim. Respondents shall

10

release Petitioner, subject to supervision pursuant to 8 U.S.C. § 1231(a)(3), **within 24 hours** of this Order, and they shall provide Petitioner with access to a telephone to arrange transportation from the detention facility.

3. The Clerk is **DIRECTED** to enter judgment granting the petition, terminate any motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida on April 14, 2026.

_____

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

c:
Michael Lanvin-Valdez
Counsel of Record

11